# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANITA AMBLER,**

    Petitioner,

v.

    Civil Action No. 5:14cv98
    Criminal Action No. 5:11cr54
    (Judge Stamp)

**UNITED STATES OF AMERICA,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On July 28, 2014, the *pro se* petitioner, an inmate at FCP Alderson in Alderson, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. On August 8, 2014, petitioner filed a motion for appointed counsel. By Order entered August 11, 2014, petitioner's motion was denied. The Government was directed to answer on August 20, 2014. On October 8, 2014, the Government filed its response. Petitioner replied on December 4, 2014. This matter, which is pending before me for report and recommendation pursuant to LR PL P 2, is ripe for review.

### II. Facts

**A. Conviction and Sentence**

Petitioner, the former bookkeeper at Mountaineer Race Track and Gaming Resort ("Mountaineer") was charged in a twenty-five-count superseding indictment with a forfeiture allegation, of various fraud-related crimes: Counts One – Eleven, Mail Fraud, in violation of Title 18, U.S.C. §1341; Counts Twelve – Nineteen, Wire Fraud, in violation of Title 18, U.S.C. §1343; Count Twenty, Wire Fraud, in violation of Title 18, U.S.C. §1343; Count Twenty-One,

Wire Fraud, in violation of Title 18, U.S.C. §1343; and Counts Twenty-Two – Twenty-Five, Transacting in Criminal Proceeds, in violation of in violation of Title 18, U.S.C. §1957.

On April 26, 2013, after a four-day jury trial, petitioner was found guilty on all counts. On July 29, 2013, petitioner was sentenced to 87 months imprisonment on Counts One – Twenty-Five, to run concurrently, with three years' supervised release on each count, to run concurrently. She was directed to pay a $100 Special Assessment on each count, for a total of $2,500.00; to make restitution to Mountaineer in the amount of $1,305,090.15; and to forfeit certain real and personal property.

## B. Appeal

Petitioner, through counsel, timely filed a notice of appeal. In her appeal, she challenged only the District Court's denial of her pretrial motion to substitute counsel; arguing that she had been denied her Sixth Amendment right to counsel; alleging numerous specific instances of counsel's ineffective assistance; and seeking to have her convictions vacated and to be remanded for a new trial with substitute counsel. By unpublished *per curiam* opinion dated April 2, 2014, the Fourth Circuit affirmed her conviction and sentence. Ambler did not petition for a writ of *certiorari*.

## C. Federal Habeas Corpus

### Petitioner's Contentions

The petitioner contends that

1) prosecutorial misconduct and ineffective assistance of counsel occurred at the recusal hearing, when both the Assistant U.S. Attorney ("AUSA") and defense counsel agreed that there might be a "misunderstanding" as to what documents were requested and what had been provided and that the issue would be corrected before trial; however, subsequent to the recusal hearing, no additional documents were produced or requested by counsel;

2) on numerous occasions, counsel failed to follow through regarding missing documents/evidence not supplied by the AUSA, documents which would have shown the

multiple errors and inaccuracies of the Marsh Audit[1] and would have changed the outcome of the trial;

3) counsel failed to call any witnesses or an expert auditor on petitioner's behalf at trial;

4) counsel failed to provide "any type of effective defense" before and during trial.

5) Counsel's opening statement prejudiced petitioner;

6) counsel failed to recuse himself when petitioner requested that he do so; and

7) at trial, counsel failed to request a U.S.S.G. 5H1.3 downward departure in petitioner's sentence, based on petitioner's post-traumatic stress disorder ("PTSD").

Petitioner did not request any particular relief.

**Government's Response**

The Government contends that petitioner's claims of prosecutorial misconduct and ineffective assistance for failing to turn over documents are in fact, claims that the government failed to disclose Brady[2] evidence, are unsupported and should be dismissed. Further, petitioner's claim that counsel was ineffective for not calling an expert auditor and/or any other witnesses on her behalf at trial is conclusory and self-serving, and would not have changed the outcome of the trial. Petitioner's claim that counsel's failure to provide a defense has no merit and should be dismissed. Petitioner's claim that counsel prejudiced her in front of the jury by making remarks about her guilt in opening statement has no support in the record. Petitioner's sixth claim of ineffective assistance, for counsel's failure to withdraw, should be dismissed because it has already been litigated on appeal and rejected. Finally, petitioner's seventh claim, that at trial, counsel failed request a downward departure on her sentence due to her PTSD has no support in the record and should be dismissed.

---

[1] The Marsh Audit was an audit obtained by the Mountaineer Race Track and Gaming Resort, to uncover the losses they suspected were a result of criminal activity in their "horseman's account." The audit was conducted by the Marsh Risk Consultants.

[2] Brady v. Maryland, 373 U.S. 83 (1963).

**Petitioner's Reply**

Petitioner reiterates her claims and attempts to refute the Government's arguments on the same.

### III. Analysis

**A. Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. U.S.A., 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

**B.     Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of her issues she may bring in her §2255 motion and which are barred either because they are not appropriately raised in a §2255 motion or because petitioner's failure to raise them on direct appeal is not excused.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). See also Herman v. United States, 227 F.2d 332 (4th Cir. 1955). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a §2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).

Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

Here, petitioner's Ground One and Two claims that counsel failed to secure requested documents; her Ground Four claim that counsel failed to provide any type of effective defense; and her Ground Six claims that counsel was ineffective for refusing her request to withdraw as counsel, have already been raised and rejected on appeal;[3] thus, they are barred by the mandate rule and cannot now be relitigated in a collateral attack. Boeckenhaupt, 537 F.2d at 1183; see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court."). Further, petitioner's Ground One claim of prosecutorial misconduct for allegedly withholding documents after admitting at the recusal hearing that it would correct the situation and produce the missing documents before trial, construed here as a Brady claim, is a constitutional error that should have been raised on direct appeal. Here, however, petitioner may not raise now raise it in her §2255 motion because she has not even attempted to demonstrate "cause" to excuse her procedural default. Further, her conclusory claim that the issue had a "huge impact" on her outcome at trial does not suffice to show actual prejudice resulting from the alleged error. Maybeck, 23 F.3d at 891.

**C. Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief

---

[3] See Brief of Appellant, (4th Cir. Dkt.# 28)(13-4569).

on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999).

**Ground 3: Whether counsel was ineffective for failing to call any witnesses or an expert auditor on petitioner's behalf at trial**

Petitioner contends that counsel failed to call any witnesses to testify on her behalf at trial, after testifying at the recusal hearing that he had contacted multiple witnesses and had hired an expert accountant/auditor to review the government's Marsh Audit. She avers that her own

review of the Marsh Audit showed "multiple errors in a variance of hundreds of thousands of dollars which would have changed my outcome at Trial [sic]. With no supporting documents provided to show that this expert accountant/auditor was ever hired, I believe Mr. Leary lied to me and this Court during the Recusal Hearing."[4] In her reply, she alleges that because of defense counsel's failure to call any witnesses, "it was important that I take the stand to prove my innocence. In the end, my taking the stand to defend myself cost me 2 additional sentencing points."[5]

The government argues that petitioner's claim that her review of the Marsh audit showed multiple errors which caused a variance of hundreds of thousands of dollars is conclusory and self-serving. Moreover, the government avers that this argument would not have changed the outcome of the trial. In any event, the government notes that at trial, counsel did advance the argument that there were multiple errors in the Marsh audit, but that the overwhelming evidence at trial established that petitioner intended to defraud Mountaineer, thus, any alleged errors in the Marsh audit would have only been relevant to sentencing, and not to the verdict itself. Although defense counsel made the strategic decision not to call witnesses, the defendant testified in her own defense and Leary vigorously cross-examined the government's witnesses. Further, counsel stated at the recusal hearing that he made the strategic decision not to put a certain witness identified by petitioner on the stand, because that witness was still employed by Mountaineer; refused to be interviewed; and he did not want to risk putting her on the stand, not knowing in advance what her testimony would be.

---

[4] Dkt.# 130 at 7.

[5] Dkt.# 144 at 4. Pursuant to U.S.S.G. §3C1.1, petitioner received a two level obstruction of justice adjustment to her base offense level for her testimony at trial. See Dkt.# 94, ¶39 at 11.

A review of the transcript of the April 9, 2013 recusal hearing, conducted two weeks before trial, indicates that petitioner claimed to the court that she had made a "substantial list of witnesses . . . that have a great impact on this case,"[6] including "a civil attorney in Wheeling who . . . has information pertinent to this case" that would have assisted Mr. Leary. Counsel advised the Court that beginning the previous summer, his office and his investigator had interviewed 13 witnesses; 2 others had declined to be interviewed; they had attempted to get in touch with 13 additional witnesses, hired one expert witness and consulted with another.[7] He advised the court that one of the witnesses petitioner wanted called was an assistant bookkeeper who initially agreed to meet with him, and *en route* to the meeting that day, he was contacted twice by Mountaineer attorneys who told him "under no circumstances would this woman meet with me." He made multiple subsequent attempts to interview that witness, speaking with both the AUSA and with Mountaineer's local counsel, but was never able to meet with the witness. He advised the court that he "made a strategic decision . . . not . . . to put a witness on the . . . stand if I don't know what that witness is going to say." He noted that under the Rules of Criminal Procedure, he had no right to depose this witness, but averred that it was certainly not true that he had made no effort to contact her.[8]

A review of the trial transcript shows that counsel vigorously cross-examined each of the government's witnesses and repeatedly challenged the accuracy of the Marsh audit. However, it is also apparent that the overwhelming weight of the evidence showed that petitioner intended to and did defraud Mountaineer.

---

[6] Dkt.# 117 at 12.

[7] Dkt.# 117 at 16.

[8] Dkt.# 117 at 17 – 18.

Petitioner simply has not established that counsel was ineffective for failing to call witnesses because she has not identified the names of any witnesses, what their anticipated testimony would have been, or how it would have exonerated her or minimized her exposure to sentencing enhancements, leaving the undersigned to speculate as to the support for her claims. Moreover, despite her claim that there were multiple errors in the Marsh audit, she does not say what they were. Despite petitioner's claimed disagreements with counsel regarding trial strategy, she provides no specific example of what counsel allegedly did or failed to do that compromised her defense, other than broad, conclusory and self-serving statements to the effect that if only things had been done differently, the outcome at trial would have been different. She has come forward only with the barest of allegations, all of which are unsupported. Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. at 856.

Petitioner has not produced any evidence that her attorney performed inadequately before or at trial. She has neither shown that her attorney made any error at all, let alone shown that counsel made an error so serious that he failed to function as her counsel under the Sixth Amendment, nor has she shown that she was prejudiced in any way by counsel's alleged failures. Therefore, because petitioner's claims do not meet the two prongs of Strickland, her Ground Three claim should be denied.

**Ground 5: Whether counsel was ineffective for making prejudicial remarks toward petitioner in his opening statement.**

Petitioner contends that during his opening statement, defense counsel Brendan Leary prejudiced her in the jury's eyes by "claiming . . . [her] guilt" through two statements: "I think this is a Simple Embezzlement and Uttering Case [sic]" and "I think it was a Scheme and Artifice to Defraud [sic]." She alleges that these statements are found on pages 14 and 17, respectively, presumably of the trial transcript.

9

However, a review of defense counsel's opening statement in the trial transcript finds no such statements; moreover, the opening statement was made by co-counsel, Joseph Blalock, not by Brendan Leary.

Nonetheless, the statement "I think this is a simple embezzlement and uttering case" was made by Leary, however, it was made after trial, at the July 29, 2013 sentencing hearing.[9] Obviously, that statement was made after the jury had already found petitioner guilty on all counts, and Leary made the statement to the court incident to his argument against the application of the U.S.S.G. §2B1.1(b)(10)(C) sentencing enhancement for petitioner having using sophisticated means to defraud Mountaineer.

Nor is the statement "I think it was a Scheme and Artifice to Defraud" found in counsel's opening statement. That statement was made by Leary the day before trial, during an April 22, 2013 motions hearing, while arguing against a conspiracy allegation.[10] Accordingly, then, it too was made outside of the presence of the jury.

Because there is no support in the record for petitioner's claim that defense counsel Leary was ineffective for making prejudicial statements about her in his opening statement to the jury, this claim should be dismissed.

**Ground 7: Whether counsel was ineffective at trial for failing to request a U.S.S.G. 5H1.3 downward departure in petitioner's sentence, based on petitioner's post-traumatic stress disorder ("PTSD").**

Petitioner contends that at trial, counsel was ineffective because he failed to request a U.S.S.G. 5H1.3 downward departure in her sentence based on her history of PTSD, and even though a full report on her condition was prepared and submitted by a psychologist, counsel did not use it at trial. In her reply, she contends that she has suffered PTSD since 2004, and because

---

[9] Dkt.# 123 at 14.

[10] Dkt.# 118 at17.

10

Leary never submitted the psychologists' report/records until July 3, 2013, in his sentencing memorandum, it "proves that Mr. Leary never intended to use any of the information/documents I presented to him to help aid in my defense at trial[.]."[11]

The government contends that petitioner is simply incorrect and is ignoring the actual record.

At trial, when petitioner took the stand, counsel briefly elicited information from her regarding her having suffered from PTSD since 2004.[12] Later, on cross exam, petitioner mentioned her diagnosis and the fact that she took medication for it.[13] Her need for medication for the PTSD was briefly mentioned by counsel again in closing argument.[14] After trial, defense counsel submitted a sentencing memorandum styled as Motion for a Variance Sentence, in which he expounded in detail about the traumatic early 2004 surgical experience that instigated petitioner's PTSD, and arguing that under 18 U.S.C. §3553(a), it should be considered as a mitigating factor for a variant sentence below the guidelines.[15] He attached copies of her treatment records and a list of her medications.[16] At the sentencing hearing, counsel argued vigorously for a variant sentence based on the PTSD as a mitigating factor.[17] Nevertheless, the

---

[11] Dkt.# 144 at 3.

[12] Dkt.# 121 at 176.

[13] Dkt.# 121 at 204.

[14] Dkt.# 122 at 40.

[15] Dkt.# 87 at 2 – 4.

[16] Dkt.# 87-1 and 87-2.

[17] Dkt.# 123 at 33 – 36.

Court found that the PTSD was not of significant significance to warrant a variant sentence,[18] and imposed an 87-month sentence, at the bottom of the guideline range of 87 – 108 months.[19]

Petitioner's allegation that counsel was ineffective for not requesting a downward departure at trial misunderstands the sentencing process. It was not the province of the jury to impose petitioner's sentence, or even to have any say in determining how long any sentence should be. As the court instructed the jury both before and after the verdict was read, "the punishment imposed on this defendant is a matter strictly for this Court."[20] As the court advised petitioner, immediately after the jury was discharged, her sentence would be determined at a later date, after she met with a United States probation officer to "assist him or her in the preparation of a meaningful presentence report[.]"[21] Accordingly, while counsel did briefly mention her PTSD issue at trial, the issue was one for consideration of mitigation at sentencing, and a review of the record reveals that counsel vigorously discharged his duty appropriately in that regard.

Therefore, petitioner has neither shown that counsel made any error at all, let alone shown that counsel made an error so serious that he failed to function as her counsel under the Sixth Amendment. Nor has petitioner shown that she was prejudiced in any way by counsel's alleged failure. Because this claim is unsupported by the record, it should be denied.

## V. Recommendation

For the above-stated reasons, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's §2255 motion (Dkt.# 130) and **DISMISSING** it from the Court's docket.

---

[18] Dkt.# 123 at 38.

[19] Dkt.# 123 at 31.

[20] Dkt.# 122 at 83 – 84.

[21] Dkt.# 122 at 94 – 95.

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by September 2, 2015**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. §636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner via certified mail, return receipt requested, and to transmit a copy electronically to all counsel of record.

Dated: August 19, 2015

                                                **/s/** James E. Seibert  
                                                JAMES E. SEIBERT  
                                                UNITED STATES MAGISTRATE JUDGE